**Case No.**

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**WEBER MOTORS, FRESNO, INC., CJ's ROAD TO LEMANS CORP., AND CHRISTOPHER JOHN WILSON'**

*Defendants-Petitioners*

*v.*

---

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**,

*Respondent District Court*,

v.

**FOUNDATION AUTO HOLDINGS, LLC; TEMPLETON MARSH, LTD.,**

*Real Parties in Interest/Plaintiffs-Respondents*

---

**IN RE: WEBER MOTORS, FRESNO, INC; CJ'S ROAD TO LEMANS CORP.; AND CHRISTPOHER JOHN WILSON'S**

**PETITION FOR WRIT OF MANDAMUS**

David L. Allen (075673)
dla@jaburgwilk.com
Thomas S. Moring
tsm@jaburgwilk.com
**Jaburg & Wilk, P.C.**
1850 N. Central Avenue, Suite 1200
Phoenix, AZ 85004
(602) 248-1000
Attorneys for Defendants/Petitioners

i

24377-24377-00001\TSM\AMC\6854882v2

# **TABLE OF CONTENTS**

RELIEF SOUGHT ............................................................................................... 1

ISSUES PRESENTED ........................................................................................ 2

FACTS NECESARY TO UNDERSTAND THE ISSUES PRESENTED ........................ 3

I.     The Parties' Claims and Defenses ............................................................ 3

II.    The District Court's Order Compelling Production of Documents .......................... 4

III.   The Court's Severe Sanctions Order ......................................................... 6

    A.     New Counsel's Appearance in the Case .......................................... 6

    B.     Former Counsel's Emails ........................................................... 9

    C.     Response to the Order to Show Cause ........................................... 12

    D.     The District Court's Rulings and Sanctions ................................... 14

    E.     The District Court's Additional Sanctions ..................................... 16

    F.     Weber's Motion for Clarification ................................................. 16

REASONS WHY THIS PETITION SHOULD BE GRANTED ................................... 18

IV.    The Issues Raised by this Petition Qualify for Mandamus Relief. ......................... 19

    A.     Third Bauman Factor: The District Court's Severe Sanctions Order is Clearly Erroneous. ................................................................... 20

        1.     The District Court Exceeded its Discretion by Dismissing Weber's Case for Discovery Infractions. ........................ 20

           a)     The District Court Abused its Discretion by Punishing Weber for Its Former Counsel's Misconduct. ........................................................... 22

           b)     Former Counsel Failed to Fully and Meaningfully Inform Mr. Wilson of the Discovery Dispute or the Court's Prior Orders. ................................... 22

           c)     Mr. Wilson Did Not Lie to the Court. .......................... 23

           d)     The District Court Failed to Give New Counsel Due Credit for Their Efforts to Correct Former Counsel's Misconduct. ................................... 24

           e)     The District Court Failed to Consider Lesser Sanctions. ......................................................... 25

           f)     The District Court Failed to Weigh the Risk of Prejudice to Foundation if Lesser Sanctions Were Granted. ............................................... 25

g)      The District Court Failed to Consider and Weigh the Strong Policy Favoring Deciding Cases on their Merits. .................................................................. 26

2.      The District Court Committed Clear Legal Error When It Imposed the Additional Sanction of Precluding Weber From Challenging Foundation's Ability to Prove Causation of Its Damages at Trial. .................................. 26

a)      Foundation Has the Burden to Prove Causation of Its Claimed Damages, Regardless of Weber's Breach of Contract. .................................................. 26

b)      This Additional Sanction is Not Specifically Related to the Particular Claim at Issue in the Discovery Order. ............................................................... 28

B.      First Bauman Factor: Weber Has No Other Adequate Means to Attain the Mandamus Relief it Requests. ...................................... 29

C.      Second Bauman Factor: Weber Will Be Damaged or Prejudiced in a Way that is Not Correctable on Appeal. ..................................... 31

D.      Fourth Bauman Factor: The District Court's Error is Oft-Repeated or Manifests a Persistent Disregard of the Federal Rules. .......................... 31

E.      Fifth Bauman Factor: The District Court's Order Raises New and Important Problems or Issues of Law of First Impression. ......................... 31

CONCLUSION ........................................................................... 32

24377-24377-00001\TSM\AMC\6854882v2

# TABLE OF CITATIONS

Page(s)

Cases

*Adriana Int'l Corp. v. Thoeren*,
913 F.2d 1406 (9th Cir. 1990).................................................................. 21, 25, 26

*Agam v. Gavra*,
236 Cal. App. 4th 91 (2015)...............................................................................27

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
155 F.4th 1082 (9th Cir. 2025)..........................................................................19

*Bauman v. U.S. Dist. Ct*,
557 F.2d 650 (9th Cir. 1977)..............................................................................19

*Brow v. U.S. Dist. Ct. of Gov't of U.S. Virgin Islands*,
121 F. App'x 443 (3rd Cir. 2005) ......................................................................30

*Ibarra v. Papierniak*,
2018 WL 2148427 (Cal. App. May 10, 2018) ...................................................27

*In re Donovan*,
871 F.2d 807 (9th Cir. 1989)......................................................................... 22, 23

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006).............................................................................25

*In re Virginia Elec. & Power Co.*,
539 F.2d 357 (4th Cir. 1976)......................................................................... 30, 31

*In re Williams-Sonoma, Inc.*,
947 F.3d 535 (9th Cir. 2020)......................................................................... 19, 31

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982).............................. 20, 28

*James Cunha v. Chico Produce, Inc.*,
2018 WL 11348748 (N.D. Cal. Sept. 5, 2018) .................................................24

*Malone v. United States Postal Service*,
833 F.2d 128 (9th Cir.1987)...............................................................................21

*McMillan v. Exir Co.*,
2020 WL 112185 (Cal. App. Jan. 10, 2020) .....................................................27

*New Pac. Overseas Grp. (U.S.A.) Inc. v. Excal Int'l Dev. Corp.*,
252 F.3d 667 (2nd Cir. 2001)..............................................................................30

*Serra Chevrolet, Inc. v. Gen. Motors Corp*,
446 F.3d 1137 (11th Cir. 2006)..........................................................................29

*Sigliano v. Mendoza*,
642 F.2d 309 (9th Cir. 1981)...............................................................................21

iii

*U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*,
  857 F.2d 600 (9th Cir. 1988)..................................................................20
*United States v. Holden*,
  908 F.3d 395 (9th Cir. 2018).................................................................20
*Von Brimer v. Whirlpool Corp.*,
  536 F.2d 838 (9th Cir. 1976).................................................................20
*Wyle v. R.J. Reynolds Indus., Inc.*,
  709 F.2d 585 (9th Cir. 1983).................................................................28

Statutes

28 U.S.C. § 1291 ...................................................................................30
Civ. Code, § 3300 .................................................................................26
Civ. Code, § 3358 .................................................................................27

24377-24377-00001\TSM\AMC\6854882v2

## RELIEF SOUGHT

Defendants/Petitioners request immediate, interim, extraordinary relief in this Petition for Writ of Mandamus, filed to prevent injustice and a tremendous waste of time and resources by being forced to try this breach of an asset purchase contract case after being stripped of their ability to defend themselves by the District Court's order imposing the most severe discovery sanction possible – in effect a default judgment dismissing their defenses to Plaintiffs/Respondents' claims and sending this case to a jury trial in May solely to determine alleged damages in an amount running well into eight figures (the District Court's "**Severe Sanctions Order**").

Petitioners are aware that interim mandamus relief is rarely granted, especially in discovery matters that are ordinarily left to a district court's discretion. But this is not an ordinary case. The District Court's Severe Sanctions Order has excessively punished Petitioners with the most severe discovery sanction possible, dismissing their case. It has precluded them from defending themselves to a jury, who will assess multimillion dollar damages against them based on instructions that they are guilty of the wrongful conduct Respondents have alleged.

Worse, the Court's Severe Sanctions Order not only precludes Petitioners from defending themselves at trial, as an additional sanction, it precludes them from challenging Respondents' ability to prove causation of their damages, and relieves them of that carrying that burden, at trial. If allowed, Petitioners can show that the

1

Respondent Buyer did not have the financial ability to comply with the contract's conditions to closing the sale, and it therefore cannot prove that, but for Petitioners' breach of the contract, it would not have incurred the damages it alleges. Moreover, there is no connection between Petitioners' failure to produce documents and the Respondent Buyer's inability to close the sale as well as no legal basis for the Court to relive it of its burden to prove causation of its alleged damages.

Absent mandamus relief, this case will be tried to a jury solely on the issue of damages, without the Respondent Buyer having to prove that Petitioners caused its alleged damages, at a tremendous cost of time, money, and resources to the parties and the District Court. Because there is a good chance the outcome of the trial will be overturned on appeal due to the Court's clear legal errors, the entire case will then have to be tried a second time.

Petitioners ask this Court to reverse and vacate the District Court's Severe Sanctions Order now, before those costs are incurred, rather than later when it is too late to prevent them from being incurred.

### **ISSUES PRESENTED**

1. Whether the District Court committed legal error by exceeding the bounds of its discretion to impose the most drastic discovery sanction possible under Rule 37 in its Severe Sanctions Order, dismissing Petitioners' defenses to Respondent's breach of contract claims prior to a trial on the merits of the case.

2

2.  Whether the District Court committed legal error by precluding Petitioners from challenging Respondent's ability to prove causation of its alleged damages at trial, regardless of whether Petitioners are liable for breach of contract.

## FACTS NECESARY TO UNDERSTAND THE ISSUES PRESENTED

Plaintiff/Respondent Foundation Auto Holdings, LLC ("**Foundation**") filed its Complaint on June 21, 2021 [EFC 1] and its First Amended Complaint ("**FAC**") on November 1, 2022 [EFC 42], a copy of which is included in the Appendix filed with this Petition ("**App.**"), attached at **App. 1**, alleging that Defendants/Petitioners Weber Motors, Fresno, Inc., CJ's Road to Lemans Corp., and Christopher John Wilson ("**Weber**") breached a sales agreement for the purchase of three luxury automobile dealerships located in Fresno, California.[1]  Weber denied liability and raised various defenses to this claim, including that it did not breach the contract and Foundation could not comply with the contract's conditions to closing and complete the sale in any event.  (See Answer [EFC 59], copy attached at **App. 2**).

**I.      The Parties' Claims and Defenses**

The contract at issue is a November 30, 2020, Asset Purchase Agreement (the "**APA**") in which Foundation agreed to purchase the luxury automobile dealerships from Weber.  (FAC ¶¶ 17-21; APA § 1.1).

---

[1] Intervenor Plaintiff/Respondent Templeton March, Ltd., brokered the sale and also seeks damages, but has not been actively involved in litigating the discovery issues that are the subject of this Petition.  (See Intervenor Complaint [EFC 27]).

3

Foundation alleges that Weber willfully breached the APA when it terminated the contract on June 11, 2021, 10 days prior to the June 21, 2021, closing date (the "**Closing Date**"), and that it incurred damages "in excess of $30 million" caused by the breach. Weber alleges that it did not breach the APA and, regardless of whether it did, Foundation was unable to perform the contract because of its poor financial condition therefore Foundation was not damaged by any such breach.

The conditions to closing that Foundation could not satisfy included, without limitation: (1) obtaining the approval of the dealerships' Landlord to assign the their leases to Foundation; and (2) obtaining approvals of the automobile manufacturers to transferring the dealerships to Foundation. Foundation had not satisfied these and other conditions as of June 11, 2021, the date Weber terminated the APA 10 days before the June 21, 2021, Closing Date, and it was clear that it could not have done so by the Closing Date.

The District Court entered its Severe Sanctions Order on June 2, 2025 [EFC 187], copy attached at **App. 3**. This order is a convenient summary of the parties' discovery dispute, the Court's prior rulings, the events leading up to the order, and its basis for imposing the sanctions at issue in this Petition.

## II. The District Court's Order Compelling Production of Documents

In April 2024, after an informal discovery conference regarding Foundation's allegation that Weber failed to produce documents responsive to its Requests for

4

Production of Documents (**RFPs**), the Court ordered Weber to produce the requested documents. (Severe Sanctions Order at 3). On May 10, 2024, to further resolve the dispute, the parties filed a joint stipulation, stating in part: "Defendants withdraw all objections to Foundation's Requests for Production, and will produce documents by July 1, 2024. As such, no Motion to Compel should be necessary at this time." (Id.).

In July 2024, Foundation filed a Motion to Compel and Request for Rule 37 Sanctions, claiming Weber still had not produced the documents it agreed to produce in accordance with this stipulation. (Severe Sanctions Order at 4-5). Weber argued that many of the documents sought by Foundation were protected by attorney-client privilege and work product doctrine. (Id. at 5). Foundation argued that Weber had waived its privilege objections in the stipulation. (Id.).

In October 2024, the Court held a hearing on Foundation's motion. (Severe Sanctions Order at 6). Weber's counsel told the Court that Weber "certainly did not intend to stipulate to withdrawing all objections" and that he did not intend to waive the privilege objections, but that he realized based on the terms of the stipulation that he had failed to make that clear. (Severe Sanctions Order at 6). The Court found Weber had waived its privilege objections, even though the stipulation did not say that, and chastised Weber's counsel, stating that he had not "acted properly in good faith" and that Weber was not "entitled to the benefit of the doubt that [it] intended to act properly and produce documents." (Severe Sanctions Order at 7).

24377-24377-00001\TSM\AMC\6854882v2

On October 29, 2024, the Court incorporated these findings in a written order. It ordered Weber to produce the requested documents and a privilege log and granted an award of $12,463.13 in fees to Foundation (its "**Order Compelling Production**" [EFC 101], copy attached as **App. 4**). (Severe Sanctions Order at 8 n. 1).

### III. The Court's Severe Sanctions Order

In December 2024, Foundation filed a request for further sanctions ("**Motion for Further Sanctions**") [EFC 107, copy attached at **App. 5**. (Severe Sanctions Order at 8). Foundation claimed Weber had still not produced any documents or the privilege log the Court had ordered in its Order Compelling Production and sought "negative inference and evidentiary sanctions." (Id). Weber's counsel conceded it had not yet fully complied with the Court's order, but told the Court he was working to locate the documents and they would be produced. (Severe Sanctions Order at 9).

In January 2025, the Court held its first hearing on Foundation's Motion for Further Sanctions. The parties disputed whether Weber had produced all of the documents Foundation had requested. Weber's counsel claimed it that had produced the documents, but the Court did not buy it. (Severe Sanctions Order at 10).

### A. New Counsel's Appearance in the Case

Weber thereafter fired its former counsel and hired Jaburg Wilk as its new and current counsel (its "**New Counsel**"). (Severe Sanctions Order at 12). New Counsel formally entered an appearance in the case on February 14, 2025 [ECF 140].

24377-24377-00001\TSM\AMC\6854882v2

On February 26, 2025, New Counsel filed a Notice to notify the Court that, upon their review, they did not believe former counsel had produced all documents that Foundation had requested or had adequately informed Weber that its document production was incomplete or that there was a Court Order Compelling Production. (Severe Sanctions Order at 12; see Defendant's February 26, 2025, Notice [EFC 140], copy attached at **App. 6**). On March 4, 2025, New Counsel filed an Updated Notice re: Discovery Compliance ("**Discovery Update**") [EFC 148], copy attached at **App. 7**, with the attached Declaration of John Christopher Wilson (the "**First Wilson Dec**.") [ECF 148-1], copy separately attached at **App. 8**.

In the Discovery Update, New Counsel informed the Court of the diligent, good faith efforts they had made to get up to speed in the case, review the massive case file, and, upon conferring with both former counsel and Foundation's counsel, attempt to determine as best they could what responsive documents had or had not been produced and what documents would still need to be produced or withheld based on valid objections. (Discovery Update at 2-4).

Mr. Wilson in the First Wilson Dec. supported New Counsel's statement that former counsel had not adequately informed Weber that its document production was incomplete or that there was an Order Compelling Production. He averred:

(1) That former counsel had never provided him with any specific Request for Production of Documents, asked him about any "specific" document request, or

even provided him with a description of any "specific" document that Weber needed to produce beyond the documents he had already given to former counsel to produce.

(2) Until he terminated former counsel, he was not aware of any motions to compel production of documents or motions for sanctions;

(3) In particular, former counsel had never provided him, nor was he aware of, the Court's Order Compelling Production.

(4) He was not aware that monetary discovery sanctions had been awarded against Weber until he was informed of that by New Counsel;

(5) He was not aware of Foundation's claim that any previous production of documents was incomplete, non-responsive, or otherwise deficient; and

(Severe Sanctions Order at 12-13).

On March 4, 2025, the Court held a hearing to inquire about Mr. Wilson's statements and permitted Foundation to conduct discovery into the attorney-client communications he alluded to in his Declaration. (Severe Sanctions Order at 14).

On March 19, 2025, Weber's New Counsel filed a Supplemental Opposition to Plaintiff's Motion for Further Sanctions [EFC 164], copy attached at **App. 9**. (Severe Sanctions Order at 14). New Counsel informed the Court that they had discovered Weber's former counsel had produced over 6,000 pages of documents and, since entering their appearance, they had produced another 1,034 documents in response to Foundation's RFPs. (Id.).

8

### B.    Former Counsel's Emails

On April 2, 2025, after conducting the discovery permitted by the Court, Foundation filed a Supplemental Reply [EFC 166], copy attached at **App. 10**, disputing New Counsel's assertions and attaching copies of three emails exchanged among Weber's former counsel, its corporate attorney Reggie Borkum, and Mr. Wilson.  Foundation argued these emails suggested that, contrary to New Counsel's knowledge and his Declaration, Mr. Wilson had known about the discovery dispute and the Court's Order Compelling Production all along.  These emails are:

(1)  A December 6, 2024, email written by Weber's former counsel, Julie Chang of MLG Attorneys at Law, to Mr. Wilson and Mr. Borkum, stating: "We will need to respond to additional discovery requests propounded by Foundation and provide some available dates for CJ's [Mr. Wilson's] deposition." (Plaintiff's Supp. Reply, p. 12). Mr. Wilson responded: "I am not sure why I am being asked to provide all of these things. …." (Severe Sanctions Order at 15).  His response was based on his belief gathered from former counsel that he had already provided all documents he needed to provide, and he relied on his counsel to handle all such matters.

(2)  A December 11, 2024, email written by Ms. Chang to others, copied to Mr. Wilson, telling them that "a Motion to Compel has been filed by Foundation." (Plaintiff's Supp. Reply, p. 26).  Mr. Borkum wrote in the same email chain that he was trying to determine "what is absolutely necessary to turn over and what can be

9

objected to," and he asked why the Court's order seemed to imply or say that "the attorney/client privilege for communications/work product prior to the … litigation was waived." (Id., p. 23). (Severe Sanctions Order at 15-16). It is thus apparent that former counsel had not informed Mr. Borkum, Mr. Wilson, or anyone else about the parties' stipulation or the Court's October 29, 2024, waiver order. Mr. Wilson was not sure what was going on and, again, he relied on his counsel to handle all such matters.

(3) A December 27, 2024, email written by Ms. Chang to Mr. Wilson and others referencing a "January 24, 2025, hearing on Plaintiff's motion for request for sanctions," stating that she planned to discuss with Plaintiff's counsel "the discovery issues in this case and the Court orders that [the judge] has put in place." (Plaintiff's Supp. Reply, p. 35). (Severe Sanctions Order at 16). Mr. Wilson again was not sure what was going on and, again, he relied on his counsel to handle all such matters, especially given Ms. Chang's statement that she would take care of it.

On April 10 2025, Weber filed a Sur-Reply to Foundation's Supplemental Reply to address these emails. (Defendants' Sur-Reply [EFC 172], copy attached as **App. 11**). New Counsel informed the Court of their diligent, good faith efforts to comply with all outstanding discovery requests and Foundation's failure to meet and confer to attempt to resolve its concerns before filing its Supplemental Reply. (Id., pp. 2-5). (Severe Sanctions Order at 16).

10

Regarding Mr. Wilson's professed lack of knowledge about what was going on in former counsel's discovery dispute with Foundation, New Counsel bolstered his Declaration by notifying the Court that Foundation had deposed three of Weber's former counsel and a paralegal and had asked them under oath whether Weber had known about the discovery dispute, the motions, or the Court's orders. Not one of them testified that Mr. Wilson knew about any of those matters and acknowledged he had not been made aware of any of those matters. (Sur-Reply, p. 5 and Exs. B-E attached thereto). (Severe Sanctions Order at 16).

On April 24, 2025, the Court held another hearing on Foundation's Motion for Sanctions. It noted the foregoing emails, which, it said, "appeared to contradict [Mr. Wilson's] statements made under penalty of perjury that previous counsel never told him about the outstanding discovery." (Severe Sanctions Order at 17). It also questioned New Counsel about "their failure to correct similar statements given to the Court by New Counsel that appear to be false." (Id.). Both Mr. Wilson (through New Counsel) and New Counsel confirmed the truth of what they had represented to the Court. The Court said that it did not believe them, and gave both of them until May 5, 2025, to "show cause why sanctions should not issue [against both of them] for making false statements to the Court." (Id.).

The Court also questioned New Counsel about Weber continuing to withhold documents based on work-product privilege. (Severe Sanctions Order at 17). New

11

Counsel stated their belief that the Court's waiver order pertained only to waiver of attorney-client privilege, not to work-product doctrine. (Id.). The Court, however, had no sympathy for the innocent error they made regarding the scope of its waiver order. (Id.).

### C.    Response to the Order to Show Cause

On May 5, 2025, in response to the Court's Order to Show Cause, New Counsel filed: (1) Defendants' Brief in support of David L. Allen and Thomas S. Moring's Response to Order To Show Cause ("**New Counsel Support Brief**") [EFC 185], copy attached at **App. 12**;[2] and (2) Defendants' Brief in support of Christopher John Wilson's Declaration ("**Wilson Support Brief**") [EFC 186], copy attached at **App. 13**, with the attached Declaration of John Christopher Wilson (the "**Second Wilson Dec**") [EFC 186-1], copy separately attached at **App. 14**.

In their New Counsel Support Brief, New Counsel explained to the Court why the information available to them, supported by the deposition testimony of three of former counsel's attorneys and a paralegal, supported the truth of the statements Mr. Wilson had made to the Court in the First Wilson Declaration. (See New Counsel Support Brief at 1-4).

In their Wilson Support Brief, accompanied by the Second Wilson Dec., New Counsel provided further support for this:

---

[2] Mr. Allen and Mr. Moring are the two New Counsel attorneys working on this matter.

(1)   Former counsel's December 2024 emails did not inform Mr. Wilson that Foundation had filed its Motion for Sanctions on December 5, 2024, before the emails were sent by former counsel.

(2)   Former counsel testified that they did not recall sending Mr. Wilson these pleadings or any discovery requests.

(3)   The December 2024 emails did not provide Mr. Wilson with a full or meaningful explanation of the serious nature of these discovery matters; he was told only that he had to provide additional information and he asked Ms. Chang why.

(4)   He nevertheless responded to Ms. Chang the information she requested except the financial documents, which he later produced.

(5)   Ms. Chang did not explain to him how the Court's prior discovery rulings had impacted the case; she stated only generally that not producing documents could have possible future consequences.

(6)   Ms. Chang did not refer specifically to Foundation's Motion for Further Sanctions asking for terminating sanctions that had been filed or the Court's October 2024 Order Compelling Production in her emails.

(7)   Although Ms. Chang's December 11, 2024, email to Mr. Wilson referred to a "Motion to Compel," the email was sent to corporate counsel and only copied to him, and it appeared to involve a legal attorney-client privilege issue, not a failure on the part of Weber to produce documents.

13

(8)   In one email, Ms. Chang indicated that former counsel had received a third-party subpoena, that Foundation had filed a motion to compel the firm's compliance with the subpoena, and that corporate counsel would receive a similar subpoena and would have to respond.  Mr. Wilson did not understand that this had anything to do with Weber.

(9)   In the one instance when Ms. Chang did explain the need to produce information, Mr. Wilson initially balked, but then produced the documents.

(10)  Mr. Wilson at the time was not aware of discovery requests or motions and was not provided with the Court's previous rulings, including the Court's order that Weber had waived attorney-client privilege objections.

(11)  In all such matters, Mr. Wilson did not intend to deceive the Court.  He relied in good faith on former counsel to inform him of his legal obligations and to handle all legal matters in this case.  He was not fully or meaningfully informed of those matters, however, and he relied on his attorneys to handle them.
(See Severe Sanctions Order at 19-20).

**D.    The District Court's Rulings and Sanctions**

 On June 2, 2025, the Court issued its Severe Sanctions Order (**App. 3**) that issued the following findings and conclusions:

(1)  Weber had violated its Order Compelling Production.  (Severe Sanctions Order at 21-22).

14

(2)  Weber's "excuse" that its former counsel did not inform it of the Court's Order Compelling Production or Foundation's request for additional documents was insufficient and contrary to a later production of documents.  (Id. at 22-23).

(3)  Former counsel's emails to Weber's corporate counsel, copied to Mr. Wilson, showed that Mr. Wilson was aware of the Court's orders.  (Id. at 23).

(4)  These emails also contradicted Mr. Wilson's claim that he was unaware of Foundation's Motion for Further Sanctions, citing a December 2024 email from former counsel referring to a January 24, 2025, hearing.  (Id.).

(5)  Weber showed "a lack of honesty and good faith" in that "Defendants' filings contain multiple statements that are clearly false."  (Id. at 23-24).

(6)  Mr. Wilson's explanation that he was not aware of any "formal document requests" was contrary to his statement that he was not aware of "specific document requests," and his statement that he did not "recall speaking with anyone regarding [his] deposition" was contrary to his former counsel's email regarding the need to provide available dates for his deposition.  (Id. at 24-25).

(7)  Mr. Wilson's statement that he was "completely unaware of [Weber's] discovery obligations" was unconvincing because the Court assumed that former counsel had litigated the issues with its client's knowledge and input.  (Id. at 25).

(8)  Weber continued to withhold documents on the basis of privilege when it had waived that objection.  (Severe Sanctions Order at 25-28).

15

The Court thus granted Foundation's Motion for Further Sanctions, ordered Weber to pay its attorney fees, and ordered: "Defendants shall be prohibited from opposing Plaintiff's claims for breach of contract and anticipatory breach of contract. The case will proceed [to trial] only on the question of damages and/or remedy for those claims." (Severe Sanctions Order at 31).

### E.    The District Court's Additional Sanctions

The Court further ruled that its preclusion order prohibited Weber from being able to "pursue [its] defense that Plaintiff independently failed to meet its obligations under the contract." (Severe Sanctions Order at 29-30). This is a significant ruling that Weber separately challenges as clear error in this Petition. The Court not only *punished* Weber with the most severe sanction possible, it *rewarded* Foundation by relieving it from its burden to prove causation of its damages at trial.

### F.    Weber's Motion for Clarification

On November 12, 2025, Weber submitted a Motion for Summary Judgment ("**MSJ**") [EFC 200] and Statement of Facts ("**SOF**") [EFC 200-1], seeking a ruling that, as a matter of law, Foundation would have to prove causation of its damages at trial. (Copies of Weber's MSJ and SOF are attached as **App. 15** and **App. 16**, respectively). The MSJ was withdrawn, but, on November 21, 2025, it was attached to a Request for Clarification of the Court's Severe Sanction Order ("**Clarification Motion**") [EFC 206], copy attached as **App. 17**. The Clarification Motion asked the

16

Court to clarify and reverse the additional sanction it imposed by precluding Weber from challenging Foundation's ability to prove causation of its claimed damages at trial, demonstrating to the Court that Foundation was incapable of performing its contractual obligations when Weber terminated the APA.  (Id.).

APA § 7.1(b) provides that the contract could be terminated by Weber if any conditions to Closing had become incapable of being satisfied by the Closing Date.  (MSJ at 5, 9-12).  Those conditions included:

(1)  <u>Landlord's Approvals</u>.  APA § 6.1(m) required that the Landlord of the automobile dealerships approve assignments of their leases to Foundation.  As stated in the Declaration of the Landlord, Al Monjazeb (Palm Bluff Investments, LLC), attached as Exhibit C to the SOF, and the Declaration of Richard M. Aaron, Mr. Monjazeb's attorney, attached as Exhibit D to the SOF, based upon their review of Foundation's financial statements, the Landlord would not approve the proposed lease assignments, and Foundation therefore could not have satisfied this condition to closing by the Closing Date.

(2)  <u>Manufacturer's Approvals</u>.  APA § 6.1(e) required that the automobile manufacturers approve transfers of the ownership of each dealership to Foundation. Foundation could not have satisfied this condition to closing based on the long list of qualifying conditions that each manufacturer imposed in its preliminary approval of the transaction, including the requirement that Foundation obtain assignments of

17

the leases, and Foundation therefore could not have satisfied this condition to closing by the Closing Date. (Id.). Copies of these documents are attached as Exhibits E-I to the SOF.

In short, there was no chance that Foundation could have satisfied these and other conditions to closing by the Closing Date, and it therefore cannot prove that Weber, rather than its own inability to perform, caused its damages.

Instead of clarifying its ruling, as Weber had requested, the Court entered an electronic minute entry that said its Severe Sanctions Order provided clarification of its ruling [EFC 214].

## REASONS WHY THIS PETITION SHOULD BE GRANTED

There are two reasons why this Petition should be granted. First, although the District Court has broad discretion to impose sanctions under Rule 37, it far exceeded that discretion, and therefore committed clear legal error, by imposing the most drastic sanction possible, effectively entering a default judgment dismissing Weber's case entirely, leaving only damages issues for trial.

Second, the Court committed clear legal error by imposing the additional sanction of also precluding Weber from challenging Foundation's ability to prove causation of its damages, an essential element of its proof of damages, at trial. The Court's sanctions not only excessively punish Weber, they relieve Foundation of its burden to prove that Weber caused its claimed damages.

18

## IV.    The Issues Raised by this Petition Qualify for Mandamus Relief.

Weber is well aware that mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes."  *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 155 F.4th 1082, 1090 (9th Cir. 2025) (citations omitted).  It may issue "only when the petitioner has no other adequate means to attain relief, and when petitioner demonstrates that the right to the writ is "clear and indisputable."  *Id*.

In keeping with this high bar, this Court applies the Bauman factors to assess petitions for mandamus, which are:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires.
>
> (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal.
>
> (3) The district court's order is clearly erroneous as a matter of law.
>
> (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.
>
> (5) The district court's order raises new and important problems, or issues of law of first impression.

*In re Williams-Sonoma, Inc.*, 947 F.3d 535, 538 (9th Cir. 2020); see *Bauman v. U.S. Dist. Ct,*, 557 F.2d 650, 654-55 (9th Cir. 1977).  Not all of these factors need to be satisfied, and all must be "weighed together" on a case-by-case basis.  *Id*.  The third factor, that the district court's order is clearly erroneous, is *dispositive*.  *Am. Fed'n of Gov't Emps.*, 155 F.4th at 1090; *Williams-Sonoma, Inc.*, 947 F.3d at 538.

Weber respectfully submits that the issues raised herein clear this high bar. Taking the Bauman factors out of order, starting with the dispositive third factor:

19

A.    **Third Bauman Factor: The District Court's Severe Sanctions Order is Clearly Erroneous.**

The third Bauman factor, that the District Court's Severe Sanctions Order is clearly erroneous for one or both of the foregoing reasons, is dispositive in this case.  The Court's order is an excessive abuse of its discretion, stripping Weber of its defenses to Foundation's breach of contract claims for failing to produce some, but not all, of the documents requested by Foundations RFPs.  This is clear legal error.  *See United States v. Holden*, 908 F.3d 395, 403 (9th Cir. 2018) ("A district court necessarily abuses its discretion ... if it makes a legal error.").

1.    **The District Court Exceeded its Discretion by Dismissing Weber's Case for Discovery Infractions.**

The District Court imposed an excessive sanction to dismiss Weber's defenses to Foundation's breach of contract claims, thereby effectively entering a default judgment ending Weber's case before it even gets to trial.  *See U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 603 (9th Cir. 1988) (equating dismissal of claims and default judgment as representing the most severe penalty that can be imposed). The Court has broad discretion to impose Rule 37 sanctions.  That discretion, however, is "not boundless."  *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th Cir. 1976).

Limitations on the Court's discretion include that sanctions must be "just" and "specifically related to the particular 'claim'" at issue in the discovery order.  *Ins.*

20

*Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S. Ct. 2099, 2107, 72 L. Ed. 2d 492 (1982).

This Court employs a five-factor test to determine whether a district court abused its discretion by dismissing a party's case for its failure to comply with a discovery order: "(1) the public's interest in expeditious resolution of the litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. United States Postal Service,* 833 F.2d 128, 130 (9th Cir.1987). "[I]t is the third [risk of prejudice to the other party] and fifth [availability of less drastic sanctions] factors that are decisive." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). In addition, and most importantly, the party's violation of a court order must be due to "willfulness, fault or bad faith." *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981).

This Petition will not sugarcoat what occurred in the District Court. What Weber's former counsel did was wrong, and the District Court had good reason to be upset. But the Court failed to give Weber the benefit of a doubt and to credit New Counsel for its diligent, good faith efforts to make things right. Although some form of sanction may have been warranted, dismissing Weber's case was not.

The District Court exceeded the bounds of its discretion in at least seven ways to excessively punish Weber for the sins of its former counsel.

21

### a)      The District Court Abused its Discretion by Punishing Weber for Its Former Counsel's Misconduct.

The underlying basis for the District Court's Severe Sanctions Order is the misconduct of Weber's former counsel. Weber understands the Court's frustration, but it should not be punished for what its former counsel did.

Although, as a general rule, a client is bound by the actions of its attorney, when the drastic sanction of dismissal is imposed, fairness demands that a court consider the relative fault of the client and its attorney to reach a just result. *See In re Donovan*, 871 F.2d 807, 808 (9th Cir. 1989) ("dismissal constitutes an abuse of discretion if the court fails to consider both alternative sanctions and the relative culpability of the appellant and his attorney, because dismissal may inappropriately punish the appellant for the neglect of his counsel."). The District Court failed to address or adequately consider this issue in its Severe Sanctions Order.

### b)      Former Counsel Failed to Fully and Meaningfully Inform Mr. Wilson of the Discovery Dispute or the Court's Prior Orders.

Upon entering the case and reviewing the discovery that had taken place, New Counsel candidly told the District Court they did not believe that former counsel had produced all of the documents Weber had been ordered to produce and were working to comply with Foundation's RFPs and the Court's Order Compelling Production and that Weber was unaware of such matters. (Severe Sanctions Order at 22). The Court balked and called their candor an insufficient "excuse." (Id).

22

The Court saw New Counsel's candor as misrepresenting what former counsel had informed Weber of prior to their entering the case. (Severe Sanctions Order at 23-25). It relied on the three emails former counsel sent to Mr. Wilson and Weber's corporate attorney suggesting that, contrary to his Declarations, Mr. Wilson had known about the discovery dispute and the Court's orders all along. (Id.). Despite evidence to the contrary, it concluded that Mr. Wilson had lied to the Court and that Weber's filings "show a lack of honesty and good faith." (Id.).

The statements made to the Court by New Counsel and Mr. Wilson, however, were true. All of the three emails, out of perhaps hundreds of emails Mr. Wilson had exchanged with former counsel, reveal more from what they do not tell him than from what they do tell him. They did not fully or meaningfully inform him of the details or depth of the discovery dispute or the Court's prior orders, and in all cases he had the right to, and did, rely on his attorneys to handle such matters.

### c) Mr. Wilson Did Not Lie to the Court.

The District Court nevertheless concluded that the statements made by Mr. Wilson in his Declarations were "clearly false." (Severe Sanctions Order at 23). It jumped to that conclusion without adequately considering New Counsel's support and explanation of his statements in their filings with the Court. It ignored that the three former counsel attorneys and paralegal had *all testified at their depositions that Mr. Wilson* was *not made aware* of any discovery dispute or the Court's orders.

23

The Court failed to give Mr. Wilson the benefit of a doubt or draw reasonable inferences in his favor, which it would have had to do on a motion to dismiss or a motion for summary judgment. His conduct was simply not the kind of willfulness, fault or bad faith that justify imposing the drastic sanction of dismissing Weber's case. At best, the Court's conclusion that he lied was a close call that did not warrant the most severe sanction possible. *See James Cunha v. Chico Produce, Inc.*, 2018 WL 11348748, at \*6 (N.D. Cal. Sept. 5, 2018) (declining to impose harsh sanctions in a "close case" because such sanctions "are not designed for close cases).

Simply put, the punishment does not fit the crime.

> **d)      The District Court Failed to Give New Counsel Due Credit for Their Efforts to Correct Former Counsel's Misconduct.**

Upon entering the case and reviewing the discovery that had taken place, New Counsel made diligent, good faith efforts to locate and review documents that or had not been produced, and produced the documents that should have been, but were not, produced. New Counsel determined that former counsel had produced over 6,000 pages of documents, and they produced another 1,034 pages of documents.

The Court failed to give New Counsel any credit for these efforts. (Severe Sanctions Order at 25-26). It viewed New Counsel's "Notice of "Late Compliance" as "far from clear" and concluded that "what is clear is that Defendants continue to

24

withhold documents on the basis of privilege despite the Court's order that any claims of privilege had been waived." (Id. at 26-27).

### e) The District Court Failed to Consider Lesser Sanctions.

The District Court did not expressly consider whether lesser sanctions, such as monetary sanctions or a narrow jury instruction or negative reference, rather than dismissal of Weber's case would not have been effective to punish it and deter such further conduct in the case. (See Severe Sanctions Order at 28-30).

This Court has held that the availability of lesser sanctions is a key, decisive Malone factor. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). When a sanction amounting to dismissal of a case is at stake, a district court is *required* to consider imposing lesser sanctions. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006) ("[t]he district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions").

Other than a brief reference to having previously assessed monetary sanctions, the District Court did not consider this key factor in its Severe Sanctions Order.

### f) The District Court Failed to Weigh the Risk of Prejudice to Foundation if Lesser Sanctions Were Granted.

Given that the scheduled trial was a year away at the time, the District Court did not appropriately weigh the lack of a risk to Foundation that granting sanctions

short of dismissing Weber's case would impair its ability to try the case on its merits. This is another Malone factor that is decisive. *Thoeren*, 913 F.2d at 1412. The Court considered this factor to be neutral, reasoning that Weber's continued withholding of documents would prejudice Foundation at trial. (Severe Sanctions Order at 30). That makes no sense. It incorrectly assumes that Weber would continue withholding documents if lesser sanctions were imposed, which would not be the case.

### g) The District Court Failed to Consider and Weigh the Strong Policy Favoring Deciding Cases on their Merits.

The District Court stated: "Defendants' own actions in withholding ordered documents are largely to blame for the claims not being determined on their merits." (Severe Sanctions Order at 28-30). The strong policy favoring deciding Weber's case does not turn on Weber's compliance with the Court's discovery order.

### 2. The District Court Committed Clear Legal Error When It Imposed the Additional Sanction of Precluding Weber From Challenging Foundation's Ability to Prove Causation of Its Damages at Trial.

The additional sanction imposed by the District Court precluding Weber from challenging Foundation's ability to prove causation of its damages at trial is an especially egregious clear legal error that compels mandamus relief.

### a) Foundation Has the Burden to Prove Causation of Its Claimed Damages, Regardless of Weber's Breach of Contract.

The law could not be more clear that proof of causation is essential to proving damages in a breach of contract case. *See* Civ. Code, § 3300 (contract damages are

26

limited to those proximately caused by the breach); Civ. Code, § 3358 (no one "can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides"); *McMillan v. Exir Co.*, 2020 WL 112185, at *1 (Cal. App. Jan. 10, 2020) ("A defendant is liable for only those damages that the defendant caused, and thus it is impossible to have a trial on damages without addressing causation."); *see also Ibarra v. Papierniak*, 2018 WL 2148427, at *10 (Cal. App. May 10, 2018) (rejecting a jury instruction that "could have had the effect of misleading the jury into believing it could imply liability for damages without proof of causation").

Even if the District Court did not abuse its discretion by stripping Weber of its defenses to Foundation's breach of contract claims, Foundation must still carry its burden to prove that it could have satisfied the APA's conditions to closing the transaction, and thus be entitled to damages, regardless of whether Weber breached the contract. *See Agam v. Gavra*, 236 Cal. App. 4th 91, 107 (2015) ("requirement that the breaching party prove any losses the non-breaching party would have incurred had the contract been fully performed does not … eliminate the requirement that the defendant's breach has *caused* the plaintiff's damages") (emphasis by the court). As set forth above, if allowed, Weber will show at trial that Foundation was incapable of satisfying the conditions to closing imposed by the APA by the Closing Date, with or without Weber's breach of the contract.

24377-24377-00001\TSM\AMC\6854882v2

**b)** **This Additional Sanction is Not Specifically Related to the Particular Claim at Issue in the Discovery Order.**

Rule 37 sanctions must be both just and "specifically related to the particular 'claim'" at issue in the discovery order. *Ins. Corp. of Ireland*, 456 U.S. at 707; *see Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983) (sanctions interfering with a party's claim or defenses violate due process "when imposed merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case").

The additional sanction of relieving Foundation of its burden to prove that Weber caused its claimed damages at trial is not specifically related to the discovery at issue or Foundation's ability to prove causation at trial. All of the documents that the Court found had been wrongfully withheld relate to Weber's breach of contract defenses or the change in location of its dealerships from Fresno to Clovis, not to Foundation's inability to close the APA transaction. (See Severe Sanctions Order at 25-27, citing withheld documents related to Weber's termination of the contract, documents exchanged with former counsel, communications with business broker Templeton, and privileged communications with former counsel). It was imposed merely for punishment of Weber's alleged discovery infractions that did not interfere with a rightful decision of the case, and it thus violates Weber's due process rights.

There is no connection, as is required, between the documents the District Court found Weber had wrongfully withheld and Foundation's obligation to prove

28

the causation of its damages at trial. Foundation has an independent, unrelated obligation to prove causation of its claimed damages and that it would be able to satisfy the APA's conditions to closing, regardless of whether Weber breached the contract and regardless of whether Weber had produced every document the Court ordered it to produce. *See Serra Chevrolet, Inc. v. Gen. Motors Corp*, 446 F.3d 1137, 1152 (11th Cir. 2006) (district court violated defendant's due process rights when it struck defenses that had no apparent relationship to the discovery abuse sanctioned).

The primary reason why Foundation cannot prove that it could have satisfied the conditions to closing imposed by the APA is because it was not strong enough financially to obtain the Landlord's approval to assign to the dealerships' leases to it. There is no "discovery" that Foundation could have obtained from Weber that would have any bearing on Foundation's unacceptable financial condition and its resultant inability to obtain the Landlord's approval of these lease assignments. The District Court's additional sanction relieving Foundation from having to prove its ability to perform, and thus causation of its damages, at trial was clear legal error.

The additional sanction should be lifted and this case should be remanded to the District Court for a trial of both the causation and the damages issues.

**B.      First Bauman Factor: Weber Has No Other Adequate Means to Attain the Mandamus Relief it Requests.**

29

The District Court's Severe Sanctions Order is not a final judgment that can be appealed under 28 U.S.C. § 1291, and Weber therefore has no other means of obtaining immediate review of the Court's Severe Sanctions Order prior to the trial of this case. *See New Pac. Overseas Grp. (U.S.A.) Inc. v. Excal Int'l Dev. Corp.*, 252 F.3d 667, 670 (2nd Cir. 2001) (order imposing Rule 37 sanctions is ordinarily not an appealable "final decision" under 28 U.S.C. § 1291).

Moreover, Weber has no other *adequate* means to attain the mandamus relief it requests because there is little solace to be found in expending the tremendous time, money, and resources needed to try a case that may well have to be tried a second time after an appeal from a final judgment. As the Third Circuit Court of Appeals has duly noted:

> An appellate remedy is not inadequate merely because it might involve more delay or cost than mandamus. However, a party will not have an adequate remedy by appeal where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery order. ….

*Brow v. U.S. Dist. Ct. of Gov't of U.S. Virgin Islands*, 121 F. App'x 443, 448 n. 5 (3rd Cir. 2005); *see also In re Virginia Elec. & Power Co.*, 539 F.2d 357, 365 (4th Cir. 1976) (if the petitioner is right and the trial judge is wrong, mandamus will prevent enormous waste of judicial time and energy and guide the district judges with a problem unlikely to present itself for traditional appellate review).

24377-24377-00001\TSM\AMC\6854882v2

**C.** **Second Bauman Factor: Weber Will Be Damaged or Prejudiced in a Way that is Not Correctable on Appeal.**

That Weber will be damaged or prejudiced in a way that is not correctable on appeal follows from the first Bauman factor. Unless mandamus relief is granted, all concerned, both the parties and the District Court will be damaged and prejudiced by the time, money, and resources needed to try this case twice in a way that is not correctable on appeal.

**D.** **Fourth Bauman Factor: The District Court's Error is Oft-Repeated or Manifests a Persistent Disregard of the Federal Rules.**

The District Court's Severe Sanctions Order is likely not an "oft-repeated error" or one that "manifests a persistent disregard of the federal rules." Not all of the Bauman factors, however, must be satisfied. *Williams-Sonoma*, 947 F.3d at 538. Nevertheless, this Court should consider granting mandamus relief as a means to exercise its supervisory role over all district courts in this circuit that may be inclined to commit or repeat the District Court's errors raised by this Petition. *See Virginia Elec. & Power Co.*, 539 F.2d at 365 ("mandamus has emerged as an appropriate remedy in the supervision of district courts by the various courts of appeals").

**E.** **Fifth Bauman Factor: The District Court's Order Raises New and Important Problems or Issues of Law of First Impression.**

That the District Court's Severe Sanctions Order raises new and important problems or issues of law of first impression favors granting mandamus relief in this case. Counsel has not found a published opinion in this circuit that directly addresses

31

the unique issues raised by this Petition, in particular the District Court's imposition of excessive sanctions that not only eliminate a defendant's ability to defend itself from a plaintiffs' claims, but allow the plaintiff to prove its damages without proving causation of its damages at trial. The Court should grant mandamus relief to provide all district courts in this circuit with guidance and precedent in resolving these unique issues of apparent first impression.

## **CONCLUSION**

Weber respectfully requests that, upon weighing these Bauman factors, this Court grant the mandamus relief it seeks to correct the District Court's clear errors before the case goes to an unnecessary and wasteful damages trial.

**DATED** this 4th day of March, 2026.

**Jaburg & Wilk, P.C.**

*/s/ David L. Allen*
David L. Allen
Thomas S. Moring
Attorneys for Defendants/Petitioners

## <u>CERTIFICATE OF COMPLIANCE</u>

I am the attorney or self-represented party.

This brief's type contains 7,739 words, excluding the items exempted by FRAP 32(f).  The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

**DATED** this 3rd day of March, 2026.

**Jaburg & Wilk, P.C.**

*/s/ David L. Allen*
David L. Allen
Thomas S. Moring
Attorneys for Defendants/Petitioners

33

24377-24377-00001\TSM\AMC\6854882v2

**CERTIFICATE OF SERVICE**

I hereby certify that on 4th day of March, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David I. Holtzman
Daniel P. Kappes
Andrew Klair
Isabella Granucci
HOLLAND & KNIGHT LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
david.holtzman@hklaw.com
daniel.kappes@hklaw.com
andrew.klair@hklaw.com
isabella.granucci@hklaw.com
*Attorneys for Plaintiff*

Forrest Booth
forrest.booth@kennedyslaw.com
Camille Zuber
Camille.Zuber@Kennedyslaw.com
KENNEDYS CMK LLP
101 California Street, Suite 1225
San Francisco, CA 94111
*Attorneys for Plaintiff-in-Intervention*


*/s/ Ana Canby*

34

24377-24377-00001\TSM\AMC\6854882v2